UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BERNICE GARZA, Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION |
| OMAR ESCOBAR JR., in his official | § | |
| capacity as District Attorney, 229th | § | No. 7:18-cv-00249 |
| Judicial District of Texas, and in his | § | |
| personal capacity; and STARR | § | |
| COUNTY, TEXAS, Defendants. | § | |

# Defendants' Reply in Support of Their Motion for Judgment on the Pleadings

To the Honorable District Judge:

Bernice Garza's complaint does not state a plausible claim, and "only a complaint that states a plausible claim for relief survives a motion to dismiss" or a motion for judgment on the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[1] Her factual allegations do not support her claim that, as "Coordinator of the Crime Victims Unit (CVU)" for the "229th Judicial District Attorney's Office," she enjoyed patronage protection. *Complaint* (Doc. 1), at 3. Although Garza argues that judgment on the pleadings is premature, *Resp.* (Doc. 15), at 4-5, 8-16, her arguments lack merit.

Starr County and Omar Escobar therefore make this reply in support of their *Motion for Judgment on the Pleadings* (Doc. 12).

---

[1] *See also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (same pleading standard applies to both types of motion).

# I. Garza has not stated a plausible claim.

The defendants' motion noted that key positions in a prosecutor's office lack patronage protection. *Mot.*, at 2-4. Using facts alleged in Garza's complaint, the motion drew comparisons between Garza's position as "Coordinator of the Crime Victims Unit (CVU)" for the "229th Judicial District Attorney's Office" and three positions in prosecutors' offices that lacked patronage protection: the assistant district attorney position in *Aucoin*, the office manager position in *Bauer*, and the secretarial positions in *Hobler. See Mot.*, at 5-7; *Complaint*, at 3 (quoted).

With those comparisons as a guide, the motion showed not only that Garza's "complaint does not allege sufficient factual content to permit a conclusion that either defendant is liable" but also that her allegations "instead negate any such conclusion." *Mot.* at 4.

## A. Garza's own allegations negate her claim.

Despite a 66-paragraph "Statement of Facts" in her complaint, Garza's main argument is that her complaint does not provide a sufficient factual basis to determine whether she has patronage protection. *Resp.* (Doc. 15), at 8-14.

Under *Twombly* and *Iqbal*, Garza carries that burden. "*Twombly* expounded the pleading standard for 'all civil actions,'" and under that standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, at 678, 684,

*quoting* FED. R. CIV. P. 1 *and Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Garza pleaded facts concerning her position and job duties, but as the motion explained, those facts negate her claim. *Mot.*, at 5-7. Garza's complaint identified her position as "Coordinator of the Crime Victims Unit" and added that she was "the head of" a "department" that "shoulders the important responsibility of communicating with and assisting crime victims." *Complaint*, at 3; *see also Mot.*, at 5. According to Garza's complaint, she "took the lead in preparing crime victims for trial" until Escobar removed that duty from her. *Complaint*, at 10; *see also Mot.*, at 5. Garza's complaint added that she "also served as the grant manager for the 229th Judicial District Attorney's Office, preparing and managing grant requests." *Complaint*, at 3; *see also Mot.*, at 5.

Garza's complaint trumpeted the importance of her position to the operations of the office. She alleged that her participation was necessary "to ensure the efficient and effective functioning of the Crime Victims Unit." *Complaint*, at 10. She urged that "Escobar chose to sacrifice the proper preparation of crime victims to testify at trial, and secure justice," when he instead assigned Garza's subordinates to take the lead in preparing crime victims for trial. *Id.*

Garza's complaint pleaded ample facts about what her job entailed, and as the motion explains, those facts negate her claim of patronage protection. *See Mot.*, at 6-7. Garza was a department head who supervised the important functions of providing crime-victim services and securing grant funding for the office. *See*

3

*id.* She was in a position to "make or break" the office's operations and "to thwart or to forward the goals" of an elected official. *Gonzalez v. Benavides*, 712 F.2d 142, 149 (5th Cir. 1983). Just as a prosecutor is entitled to a politically loyal assistant district attorney (as *Aucoin* explains), a politically loyal office manager (as *Bauer* explains), and politically loyal secretaries (as *Hobler* explains), Escobar was entitled to a politically loyal agent to serve as his Crime Victims Unit coordinator. *See Mot.*, at 6-7, *citing Aucoin v. Haney*, 306 F.3d 268, 276 (5th Cir. 2002), *Bauer v. Saginaw County*, 641 Fed. Appx. 510, 512, 516 (6th Cir. 2016), *and Hobler v. Brueher*, 325 F.3d 1145, 1152 (9th Cir. 2003).

Garza's own complaint shows that her political "affiliation is an appropriate requirement for effective performance of the public office involved." *Branti v. Frankel*, 445 U.S. 507, 518 (1980). Because the characteristics of Garza's position made "political loyalty, or the absence of political adverseness," an appropriate requirement for employment, the position does not carry protection from political dismissal. *Hobler*, at 1154.

## B. The statutory duties of Garza's position reinforce a conclusion that the position did not enjoy patronage protection.

The defendants' motion noted that Garza's position was a statutory creation and cited the duties specified by statute. *Mot.*, at 5-6, *citing* TEX. CODE CRIM. PROC. §56.04(a). As *Aucoin* shows, statutory statements of job duties are relevant in determining whether a position has patronage protection. *Aucoin*, 306 F.3d at 275-276.

The duties specified in Section 56.04(a) of the Texas Code of Criminal Procedure reinforce the conclusion that Garza's position lacks patronage protection. *See Mot.*, at 6. In addition to a duty to "ensure" that crime victims are afforded statutory rights, a crime-victim assistance coordinator "shall work closely with appropriate law enforcement agencies, prosecuting attorneys, the Board of Pardons and Paroles, and the judiciary in carrying out that duty." TEX. CODE CRIM. PROC. §56.04(a).

Garza argues that the statute "tells this court nothing about the actual nature of Ms. Garza's work". *Resp.*, at 12. But Garza has neither pleaded, nor alleged in her response, that her actual job duties involved less than the statutory description.

Under Garza's approach, a plaintiff could avoid dismissal by stating very little about the duties and other characteristics of her position, and courts could not consider conventional job descriptions (such as that for an elected official's personal secretary) or statutory job descriptions (such as that of the assistant district attorney in *Aucoin*) unless a plaintiff expressly pleads that her position complied with convention or statute. Garza provides no authority for that approach.

The Supreme Court has nonetheless instructed courts to "draw on [their] judicial experience and common sense" when evaluating the sufficiency of a complaint. *Iqbal*, at 679. Unless a plaintiff affirmatively pleads facts to the contrary, a court should infer that a statutory position carried the corresponding statutory duties.

Such an inference is necessary to apply a "realistic understanding" of the position. *Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 141 (5th Cir. 1991) (applying "a realistic understanding of the confidential relationship between secretaries and their bosses" in concluding that patronage protection did not apply). Even without "substantial evidence that [a] position requires loyalty and confidentiality," courts may rely on "common experience that loyalty and the ability to keep confidences are essential qualities" for the type of position. *McCabe v. Sharrett*, 12 F.3d 1558, 1572 (11th Cir. 1994) (police chief's secretary).

Garza cannot avoid consideration of her statutory duties at the pleading stage any more than a breach-of-contract plaintiff can avoid consideration of the contract or a discrimination plaintiff can avoid consideration of her EEOC charge. *See, e.g., Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (considering contract attached to motion to dismiss); *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. 2013) (considering charges attached to motion to dismiss). Indeed, in ruling on a motion to dismiss or motion for judgment on the pleadings, "a district court may take into account" such things as "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron Inc.*, 540 Fed. Appx. 408, 409 (5th Cir. 2013). Given that a statute is a matter of public record, consideration of the statutory

duties of Garza's position is appropriate absent any allegation in her complaint that contradicts those duties.

The statutory duties reinforce a conclusion that Garza's position lacked patronage protection and the further conclusion that she has not pleaded a plausible claim.

## C. Garza's *Pickering*-based arguments lack merit.

Garza mistakenly asserts that her claim cannot be dismissed on the pleadings because her claim requires *Pickering* balancing. *See, e.g., Resp.*, at 3. As discussed below, her claim does not require such a balancing, and even if it did, dismissal on the pleadings would still be appropriate.

### 1. A **Pickering** *balance was not required.*

Garza argues that patronage protection depends on "application of the balancing analysis of *Pickering v. Board of Education*, 391 U.S. 563 (1968)." *Resp.*, at 7. Garza cites *Aucoin* for this principle.

While *Aucoin* mentions *Pickering*'s balance between employee and employer interests, *Aucoin*, 306 F.3d at 273-274, the result in *Aucoin* turned simply on whether "political loyalty" was an appropriate consideration for employment of an assistant district attorney. *Id.* at 276. The Fifth Circuit repeatedly spoke of "the *Elrod-Branti* exception", *see id.* at 274-276, and noted: "The other circuits that have addressed the *Elrod–Branti* exception in the context of government attorney dismissals, whether for assistant district attorneys or other

7

government attorneys, have held that these attorneys occupy positions requiring political loyalty and are not protected from political dismissals under the First Amendment." *Id.* at 275.

Outside the government-attorney context, the result in *Gentry* likewise turned on a conclusion that political loyalty was a legitimate qualification for the positions of county road manager and county administrator. *Gentry v. Lowndes County*, 337 F.3d 481, 485-488 (5th Cir. 2003). Likewise, *Soderstrom* turned on a conclusion that an elected police chief could request political loyalty from his secretary, and the court did not engage in any *Pickering* balancing. 925 F.3d at 140-141.

*Aucoin, Gentry,* and *Soderstrom* show that any balance tilts in the employer's favor when an employee occupies a policymaking position, a confidential position, or any other position for which political loyalty is an appropriate qualification. As the Ninth Circuit stated when discussing dismissal of a prosecutor's secretaries, "where the *Branti* exception applies the employee can be fired for purely political reasons without any *Pickering* balancing." *Hobler*, 325 F.3d at 1150 (quot. omitted); *compare Bauer*, 641 Fed. Appx. at 514-517 (concluding – without mention of *Pickering* – that claim of prosecutor's office manager failed under "*Elrod-Branti* exception").

Starr County and Escobar therefore satisfied any possible *Pickering* concerns by showing that Garza's allegations placed her within the *Elrod-Branti* exception.

### 2. Even if a balance were required, the facts in Garza's complaint balance in the defendants' favor.

Even if *Pickering* balancing were required, that would not immunize Garza's suit from dismissal on the pleadings. In claiming that immunity, Garza misplaces reliance on certain statements in *Burnside. See Resp.*, at 4-5, *citing Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014).

*Burnside* did not say that *Pickering* balancing can never occur at the pleadings stage. *Burnside* instead said that "there is a rebuttable presumption that no balancing is required to state a claim" because the plaintiff's allegations "will generally lead to a plausible conclusion that the employee's interest in commenting on matters of public concern outweighs the employer's interest in workplace efficiency." 773 F.3d at 628. The terms "rebuttable presumption" and "generally" allow for exceptions.

With a scathing explanation, the Ninth Circuit rejected an argument similar to Garza's and, on the pleadings, resolved a *Pickering* balance in the employer's favor. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 and fn. 1 (9th Cir. 1997). Noting supportive opinions from other Circuits, the Ninth Circuit explained, "Well established precedent supports our analysis, as does logic. It is illogical to say that something is a question of law, and that it is reviewed de novo, yet that it can never be decided on the pleadings." *Id.* at 783 fn. 1. "Whether the case can be dismissed on the pleadings depends on what the pleadings say." *Id.* "If the pleadings establish facts compelling a decision one way, that is as good as if

depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Id.* Thus, after reviewing the pleadings, the Ninth Circuit concluded "that the balance can only come out one way on the averments pleaded." *Id.* at 783.

"The *Pickering* balancing inquiry is also a question of law." *Davis v. Allen Parish Service Dist.*, 210 Fed. Appx. 404, 408 (5ᵗʰ Cir. 2006); *see also, e.g., Connick v. Myers*, 461 U.S. 138, 149-154 (1983) (reversing judgment for plaintiff and rendering judgment for defendant). Thus, if the facts pleaded do not support resolution of that balance in the plaintiff's favor, the suit should be dismissed. *Weisbuch*, at 783 and fn. 1.

When conducting that balance, a court should consider two important instructions from the Supreme Court. First, "[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick*, at 151-152. Second, the Supreme Court did "not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Id.* at 152. Thus, courts have rejected the proposition that "factual development is necessary to see whether the workplace was effectively disrupted." *Weisbuch*, at 783 fn. 1. A court may even "draw[] reasonable inferences of harm from the employee's speech, his position, and his working relationship with his superior." *Hall v. Ford*, 856 F.2d 255, 261 (D.C. Cir. 1988), *quoted in Weisbuch*, at 783 fn. 1.

To the extent that application of the *Elrod-Branti* exception does not answer any *Pickering*-balance concerns, the facts in Garza's complaint nonetheless put that balance in the defendants' favor.

The Fifth Circuit and the Supreme Court have recognized that "close working relationships" are "crucial in public attorney's offices." *Lumpkin v. Aransas County*, 712 Fed. Appx. 350, 359 (5th Cir. 2017), *citing Connick*, at 151-152. The existence of such a relationship here is apparent: Garza was a department head and the grant manager for a district attorney's office that served three rural counties. *Complaint*, at 3; *see also* TEX. GOVT. CODE §§24.276, 43.168 (229th Judicial District Attorney serves Duval, Jim Hogg, and Starr Counties).

Despite that close relationship, Garza openly supported a slate of candidates that Escobar opposed – including one candidate (Garza's sister) who sought to oust the incumbent county judge in Starr County and another candidate whose election as district judge "could put her in a position of power over [Escobar] as the District Attorney." *Complaint*, at 11. Such unwanted political activities could impair a victim assistance coordinator's ability to meet her statutory obligation to "work closely with appropriate law enforcement agencies, prosecuting attorneys, the Board of Pardons and Paroles, and the judiciary" in providing crime-victim services. TEX. CODE CRIM. PROC. §56.04(a). Such unwanted political activities also reflect a lack of loyalty that a district attorney may legitimately expect from the holder of the position. *See above*, at 3-4, 7-8; *see*

*also McCabe*, 12 F.3d at 1570-1572 (weighing expectation of loyalty in employer's favor).

Under *Connick*, actual impairment of workplace duties and relationships is not required. 461 U.S. at 152. The pertinent question is whether Escobar's alleged action exceeded the "wide degree of deference to the employer's judgment" that is afforded when close working relationships exist. *Id.* at 151-152. Garza's allegations do not show an abuse of that discretion.

Thus, to any extent that *Pickering* balancing is needed, Garza's complaint still fails to state a plausible claim.

## D. The grounds in the motion apply to both alleged adverse employment actions.

In her response, Garza alleges that she asserted "two actionable adverse employment actions" – a retaliatory "demotion/reassignment of duties" and her ultimate termination. *Resp.*, at 3. According to Garza's complaint, she nonetheless "remained the titular head of the CVU, with no reduction in salary," and she still prepared witnesses without Escobar's knowledge. *Complaint*, at 10. She also continued to manage grants for the office. *Id.*

The grounds asserted in the defendants' motion apply to both adverse employment actions. Regardless of whether Garza considers her alleged "demotion/reassignment" and termination as separate acts or continuing conduct, she did not enjoy patronage protection in her position as Coordinator of the Crime

Victims Unit. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74-75 (1990) (*Elrod-Branti* analysis not limited to patronage dismissals).

## II. Escobar is entitled to qualified immunity.

As the motion for judgment on the pleadings explained, Garza's allegations fail to overcome Escobar's right to qualified immunity even if she otherwise adequately pleaded a claim. *Mot.*, at 8-9. As discussed below, Garza's response relies on misconceptions about qualified immunity and therefore provides no reason for denying Escobar that immunity.

### A. Garza's "*Schultea* waiver" argument lacks merit.

Garza asserts a purported procedural bar to qualified immunity by arguing that when "a defendant fails to adhere to the *Schultea* procedure" of requesting a Rule of Civil Procedure 7 reply, "he waives his qualified immunity defense during the pleading stage." *Resp.*, at 16, *citing Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). Nothing in *Schultea* suggests that the failure to invoke its procedure waives a qualified immunity defense. Rather, *Schultea* empowers a court to request a reply on its own motion if a defendant does not request one. 47 F.3d at 1433.

Supreme Court authority also contradicts Garza's waiver assertion. That court has repeatedly recognized that a defendant may raise qualified immunity in a motion, such as a motion to dismiss, that challenges the sufficiency of a complaint. *See, e.g., Iqbal*, 556 U.S. at 672-675, 687 (complaint held insufficient); *Ashcroft v. al-Kidd*, 563 U.S. 731, 734, 744 (2011) (same); *Wood v. Moss*, 572 U.S. 744, 748-

749 (2014) (same); *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1852, 1867-1869 (2017) (same). None of those Supreme Court cases mentioned a Rule 7 reply. *See id.*

The Fifth Circuit has likewise affirmed the dismissal of suits on the pleadings, for failure to overcome qualified immunity, in the absence of a Rule 7 reply. *See, e.g., Lincoln v. Turner*, 874 F.3d 833, 838, 839 fn. 11 (5th Cir. 2017) (noting lack of a Rule 7 reply). Whether to order a Rule 7 reply is a discretionary decision of the trial court. *Id.* at 839 fn. 11; *see also Schultea*, at 1433-1434. Moreover, the purpose of a Rule 7 reply is to solicit additional facts from the plaintiff, *Schultea*, at 1433-1434, and even where a Rule 7 reply is not requested, a plaintiff can still offer additional factual matter in response to a motion to dismiss by tendering amended pleadings under Rule 15.

Garza's *Schultea*-based waiver argument lacks any merit.

## B. Garza's allegations, even if true, do not show a violation of clearly established law.

Recent Supreme Court opinions underscore the difficulty a plaintiff faces in meeting the "clearly established law" requirement for overcoming qualified immunity. For example, where "a division in the courts of appeals" exists on a central issue, "a reasonable official lacks the notice required before imposing liability." *Ziglar*, 137 S.Ct. at 1868. Given that "existing precedent must have placed the statutory or constitutional question beyond debate", *al-Kidd*, 563 U.S. at 741, the Supreme Court has repeatedly questioned whether, standing alone, "a controlling circuit precedent could constitute clearly established federal law" for

the purpose of qualified immunity. *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014); *see also City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015) (raising same question); *Reichle v. Howards*, 566 U.S. at 665-666 (2012) (same). Moreover, because both state and federal courts may decide issues arising under the federal constitution, the qualified-immunity analysis looks beyond federal-court decisions to include what state courts have said. *Stanton v. Sims*, 571 U.S. 3, 9-10 (2013) (noting conflict between Ninth Circuit and California state court opinions in concluding that qualified immunity protected officer).

The Supreme Court has also emphasized the situation-specific nature of the analysis. To deny qualified immunity, a court must conclude that "it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867 (quot. omitted). Thus, a court errs if it "defines the qualified immunity inquiry at a high level of generality" and "fails to consider that question in the specific context of the case." *Mullenix v. Luna*, 136 S.Ct. 305, 311 (2015); *see also id.* at 308. The Supreme Court has "repeatedly told courts" to avoid that error. *Al-Kidd*, at 742; *see also, e.g., Mullenix*, at 308 (quoting *al-Kidd*), *and Sheehan*, at 1775-1776 (same). The "right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see also Reichle*, at 665 (requiring definition in a "particularized" sense so that the "contours" of the right are clear). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified

liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). As a corollary of this particularity principle, existing precedent does not clearly establish the applicable legal rules when that precedent is "simply too factually distinct to speak clearly to the specific circumstances" facing an official. *Mullenix*, at 312.

Garza's response does not explain how existing precedent clearly establishes her right to patronage protection. *See Resp.*, at 16. She instead focused on her *Schultea*-waiver argument and a *Pickering*-balancing argument. *See id.*

Existing precedent does not clearly establish that her position was one that carried patronage protection. A reasonable official in Escobar's position could reasonably conclude from cases such as *Aucoin*, *Bauer*, and *Hobler* that Garza did not enjoy that protection. *See above*, at 2-4, 7-8. To any extent that Garza has provided conflicting authority, that authority does not put the question beyond debate.

Nor does existing precedent clearly establish the need for any *Pickering* balance or that the balance must fall in Garza's favor on the facts that she pleaded. Under *Aucoin* and *Gentry*, when political loyalty is a legitimate qualification, no balancing is required. *See above*, at 7-8. Neither *Bauer* nor *Hobler* applied *Pickering* balancing in concluding that one prosecutor's office manager and another prosecutor's secretaries lacked patronage protection. *See above*, at 2-4, 8. Although the Texas Supreme Court has not considered whether *Pickering* balancing must be applied to a policymaking or confidential employee, one of its

16

justices issued a concurring opinion that concluded that a dismissal was justified based on the *Elrod-Branti* exception without additional *Pickering* balancing. *City of Alamo v. Montes*, 934 S.W.2d 85, 86 (Tex. 1996) (Gonzalez, concurring). Here too, to any extent that Garza's authorities are in conflict, they do not put the question beyond debate. As the Supreme Court has repeatedly said, it is "unfair" to subject an official to liability when "judges … disagree on a constitutional question". *Wilson*, 562 U.S. at 618; *see also Ziglar*, at 1868; *Reichle*, at 669-670.

Garza's complaint fails to meet the high standard that the Supreme Court has set for overcoming an official's qualified immunity. Thus, even if Garza otherwise adequately pleaded her complaint, the Court must still dismiss Garza's claim against Escobar in his individual capacity.

## Conclusion and prayer for relief

For the reasons stated in *Defendants' Motion for Judgment on the Pleadings* (Doc. 12) and this reply, Starr County and Escobar ask that the Court grant the relief sought in that motion.

Respectfully submitted,

/s/ Myra K. Morris
Myra K. Morris, Attorney-in-Charge
State Bar No. 14495850
Federal I.D. No.: 13611

Brian C. Miller
State Bar No. 24002607
Federal I.D. No. 21994

ROYSTON RAYZOR
VICKERY & WILLIAMS L.L.P.
802 N. Carancahua St., Suite 1300
Corpus Christi, TX 78401
Tel. No. (361) 884-8804
Fax No. (361) 884-7261

*Counsel for defendants Starr County and
Omar Escobar (in his official and
individual capacities)*

# Certificate of Service

I certify that this document was served on all counsel of record, shown

below, using the CM/ECF system on January 4, 2019.

Jerad Wayne Najvar
NAJVAR LAW FIRM P.L.L.C.
2180 N. Loop West, Suite 255
Houston, TX 77018
*Counsel for Plaintiff*

/s/ Myra K. Morris
Myra K. Morris